# Skipper *v.* State.

## *Murder.*

[Decided June 5, 1905.]

1. *Criminal Law; Venire; Jurors Name.*—It is not good grounds for quashing the venire that the name of a juror on the regular venire is written Bachlor, and on the list furnished to the defendant it is written Bachelor.

2  *Same; Same; Supplying Juror.*—Where it appears that a person drawn as a juror did not live in the county where drawn, the court properly struck his name from the venire and filled his place in a legal way with a qualified juror, hence motion to quash venire on this ground was properly overruled.

3  *Homicide; Threats; Self Defense.*—The defendant having willingly engaged in the deadly combat could not invoke the doctrine of self defense, and was not entitled to have evidence of threats made by the deceased against him introduced in evidence.

4. *Criminal Law; Instructions; Argumentative Charges.*—The guilt or innocence of one where two or more are indicted in no wise affects the other, unless conspiracy is charged, and charges which require an acquittal unless the jury believe that all are guilty, do not state correct propositions of law, are argumentative and properly refused.

Appeal from Geneva Circuit Court.
Heard before Hon. H. A. Pearce.

The appellant and John Fair were jointly indicted for the murder of Reddick Skipper by shooting him with a gun. On motion of defendant Skipper a severance was granted and said Skipper was tried alone.

Before entering upon the trial, the defendant moved the court to quash the venire drawn and served upon him because the venire of the regular jury drawn for that week contained the name of J. A. Bachlor, and the list served upon him for his trial contained in lieu thereof the name of J. A. Bachelor. It was admitted that this was true. The court denied the motion. The defend-

ant also moved to quash the venire because on organization of the jury one J. A. W. Besole was drawn and it being made known to the court that he did not live in Geneva county, the court ordered his name stricken from the list and directed the sheriff to summon legally qualified persons to serve as juror in his stead. This motion was also denied.

The testimony tended to show that the deceased and several others were pulling fodder in the field near the public road. The defendant came down the road with a shot gun on his shoulder, went into the field where they were at work and as he approached bade them all good morning. All responded except deceased, who hung up his hand of fodder and said to defendant, "Why didn't you meet me Saturday evening and settle that difficulty between us as you promised?" The defendant replied, "I did not want to." The deceased then said, "Meet me today at 12 o'clock and lets settle it." The defendant answered: "Why not settle it now, threw up his gun, shot and killed deceased. The evidence on the part of the defendant tended to show further that when defendant said why not settle it now, the deceased advanced on him with his right hand in his pocket and that before defendant shot, he said, "Do not come on me with that knife." The evidence tended further to show that the shot was fired while deceased was still advancing in the attitude above stated. This evidence was denied by several witnesses. The defendant also offered to prove by several witnesses threats made against him by deceased, which threats were communicated to defendant before the killing. The State objected and the court sustained its objection and defendant duly excepted. The defendant requested the court in writing to give the following charges which were refused by the court. 1. The court charges the jury that the defendant cannot be convicted as charged unless the jury believe beyond a reasonable doubt that at the time of the killing, the defendant had a formed design to kill. 2nd. For the jury to accept and adopt the plea of self defense, insisted on now by the defendant in this case, if that plea is consistent with the case made by the evidence, and the jury should adopt that defense and acquit the defendant, that would be up-

holding the law of the State. 3. If the jury believe that the life of the defendant was threatened by Reddick Skipper, and these threats had been told to the defendant, then the defendant had the right to provide himself with arms; and if at the time of the killing the defendant was free from fault in bringing on the difficulty and the mode of escape was by exigencies of his surrounding from physical disability or other reasonable cause, cut off, and the circumstances were such as to create a reasonable belief in the mind of the accused that his danger was imminent, then the law says he may strike himself and take the life of his assailant. 4. Although the jury may believe that the shooting of Reddick Skipper was the voluntary act of the defendant, and was intended as a shot to kill him, still if he had the legal right to shoot, then, in self defense, he must be acquitted. 5. If the defendant killed Reddick Skipper in Geneva county by shooting him with a gun and the jury, upon all the evidence, have a reasonable doubt whether he acted in self defense in killing him, he must be acquitted. 6. There is no evidence in this case that the defendant and John Fair killed Reddick Skipper by shooting him with a gun. 7. Unless the jury believe from the evidence that the defendant and John Fair killed Reddick Skipper in Geneva county, Alabama, by shooting him with a gun, they must acquit him. 8. If the defendant acted in self defense in shooting Reddick Skipper he cannot be convicted, although the jury believe at the time of doing so, he was mad with him and intended to kill him. 9. Although the jury may believe that the defendant killed Reddick Skipper in Geneva county, and that he was actuated by malice in doing so, still, if at the time he had the right to do so in defense of his own person he must be acquitted. 10. The indictment in this case charges a joint killing by the defendant and John Fair by shooting him with a gun, and unless the jury believe from the evidence that the killing of the deceased was joint, they must acquit the defendant. 11. If the jury believe the evidence they must acquit the defendant.

Defendant was convicted of murder in the second degree and appeals from said judgment.

[Skipper v. State.]

No brief for appellant came into the Reporter's hands.

MASSEY WILSON, Attorney General for State.

TYSON, J.—The motion to quash the *venire* because of a mistake in the name of Bachelor, one of the veniremen summoned to serve as a regular juror, was properly overruled. So too was the action of the court in discarding the name of Besole, which was on the list of jurors delivered to defendant, and ordering the sheriff to summon a legally qualified person to supply the place, proper.—Criminal Code, §5007.

The evidence beyond adverse inference established that defendant willingly entered into the difficulty. Indeed, his testimony shows that he invited it and encouraged it. His going to the place where deceased was, armed with a shotgun, in view of their deadly hostility towards each other was an act calculated to bring on the difficulty which ensued between them.—*Reese v. State*, 135 Ala. 13. And this fact, coupled with his reply to the deceased, makes it clear beyond adverse inference that he was willing to engage in the deadly combat. This being true he was not entitled to invoke the defense of self defense. Evidence of threats by deceased against him, therefore, was inadmissible.—*Ragsdale v. State*, 134 Ala. 24. For the same reason, if for no other, written charges 3, 4, 5, 8 and 9 were properly refused.

Charge 1 was clearly bad.—*Williams v. State*, 128 Ala. 17. Charge 2 was an argument and otherwise bad. Defendant's guilt in no wise depended on whether Fair, who was jointly indicted with him, participated in the act of killing. Charges 6, 7 and 10 were, therefore, properly refused.

Charge 11 was the general affirmative charge with hypothesis. This one, of course, could not have been given. On the contrary, a similar charge, if requested by the State, might well have been given.

Affirmed.

McCLELLAN, C. J., SIMPSON and ANDERSON, JJ., concurring.