# Spivey, *et al. v.* The State.

## *Murder.*

(Decided February 11, 1913. Rehearing denied April 8, 1913. 61 South. 607.)

1. *Homicide; Self-Defense; Bringing on Difficulty.*—Where a defendant gets out of his buggy and goes towards a deceased to resent an opprobrious epithet, having knowledge of the bad feeling and enmity existing between them, such action is calculated to bring on a difficulty likely to produce serious results and hence, under such circumstances, the defendant may not invoke the doctrine of self-defense where he kills the other party.

2. *Same; Extenuation; Abusive Language.*—The statute making abusive language a matter for consideration in extenuation or justification of an assault applies only to prosecutions for assaults, assaults and batteries or affrays, and not to homicide.

3. *Same; Instruction; Threats.*—A charge asserting that if deceased made threats against defendant before the difficulty, and that they were continuously made up to near the time of the fatal difficulty, whether or not they were all repeated to defendant, they are material, and should be weighed and considered in determining the character of an assault made by deceased on defendant, is misleading as to the uncommunicated threats.

4. *Charge of Court; Invading Jury's Province.*—A charge asserting that the jury should consider certain evidence as material invades the province of the jury.

5. *Same.*—A charge asserting that if deceased made threats against defendant shortly before the difficulty and they were communicated to defendant on the day preceding the difficulty, and on the day of the difficulty defendant had good reason to apprehend an attack, and the evidence showed that such an attack would probably be dangerous to his life or limb, defendant, in carrying a pistol on the day of the difficulty was not guilty of an unlawful act, as a matter of law, not only invaded the province of the jury but was an incorrect statement of the law.

6. *Witnesses; Examination; Cross.*—Where defendant introduced the clothing which he wore at the time of the difficulty, and the evidence as to its condition as to cuts shortly after the difficulty was in conflict, he could be asked, on cross-examination, about not having introduced the clothing at the preliminary trial.

APPEAL from Pike Circuit Court.

Heard before Hon. H. A. PEARCE.

Holland and Robert Spivey were convicted of murder in the second degree, and appeal.    Affirmed.

After the evidence was in, the defendant requested the court to permit the jury, under the escort of the sheriff, to go to the scene of the difficulty and view the situation, which request was declined.    The oral charge of the court excepted to is as follows:    "If Stevens used insulting or opprobrious words to Holland Spivey, and he got out of the buggy for the purpose of resenting the insult and a difficulty arose between them, the defendant Holland Spivey would not be free from fault in bringing on the difficulty.    If the purpose and object of the defendant at the time that he jumped out of the buggy was for the purpose of taking revenge or attacking the deceased, and, as a result of such act, he took the life of Lee Stevens, he would not be free from fault in bringing on the difficulty."    In this connection it is recited that the court stated to the jury that murder in the second degree was the highest degree of which the defendant could be convicted.

The following charges were refused to defendant:

"(1) If Holland Spivey was inspired by an insult to enter into the difficulty which resulted in the death of Lee Stevens, then he could not be said to have entered into the difficulty willingly.

"(2) The court charges the jury that Lee Stevens was at fault in bringing on the difficulty."

"(4) If Lee Stevens made threats against Holland Spivey before the difficulty, and those threats were continuously made up to near the time of the difficulty, whether they were all repeated to Holland Spivey or not, they are material, and should be considered by the jury in weighing the character of assault made by Lee

Stevens on Spivey, if the jury believed that such an assault was made.

"(5) The law which says that a man may not fight willingly does not mean that if he is free from fault in bringing on the difficulty, but if the difficulty is brought on by the other party without his fault, by the use of a vile epithet, he may not resent it."

"(7) The law which says that a man must not fight in a difficulty willingly does not mean that a man may not resent an insult offered him, when he had no part in causing the insult to be offered."

"(9) If Holland Spivey was free from fault in provoking an insult from Lee Stevens, and Lee Stevens insulted him, and, for the purpose of resenting the insult then given, Holland Spivey got out of the buggy, then that act cannot be said to have been willingly entering into the difficulty."

"(11) If the jury believe from the evidence that, when the defendants got even with Lee Stevens, Stevens insulted the defendant in the manner testified to, then defendant would have been justified in resenting that insult, and for that purpose was not in fault in getting out of the buggy.

"(12) The court charges the jury that if threats had been made against Holland Spivey by Lee Stevens shortly before the difficulty, and if those threats were communicated to Holland Spivey on the day before the difficulty, and if Holland Spivey on the day of the difficulty had good reason to apprehend an attack, and if the facts in evidence show that such attack would probably be dangerous to his life or limb, Holland Spivey, in carrying a pistol on the day of the difficulty, was not, as a matter of law, guilty of an unlawful act."

"(14) If Holland Spivey was induced to enter into the diffinclty by an insult then and there given, not

[Spivey, et al. v. The State.]

induced by him, then he could not be said to have entered into the difficulty willingly."

FOSTER, SAMFORD & CARROLL, and W. L. PARKS, for appellant.   Under the evidence it was for the jury to say whether the purpose of defendant in getting out of his buggy and going towards deceased was legitimate, and therefore, to determine whether he acted in self-defense, or could invoke that doctrine.—*Howell's Case,* 79 Ala. 283; *Reese v. The State,* 135 Ala. 14; *Kimbrew v. The State,* 62 Ala. 248; *Leonard v. The State,* 66 Ala. 461.   Charge 4 should have been given.—*Howard's Case,* 172 Ala. 407.   The court was in error in permitting it to be shown on cross-examination of defendant that he did not introduce his clothing on the preliminary hearing.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the state.   Under the facts in this case the court properly instructed the jury that defendant could not invoke the doctrine of self-defense.—*Howell v. The State,* 79 Ala. 283; *Jones v. The State,* 96 Ala. 102; *Bondurant v. The State,* 125 Ala. 31; *Mitchell v. The State,* 129 Ala. 23; *Johnson v. The State,* 136 Ala. 76.   No person can bring about a necessity to kill another, and then plead that necessity in justification.—*Webb v. The* State, 100 Ala. 47.   The refused charges were faulty and were not numbered.— *Martin v. The State,* 1 Ala. App. 215; *Gibson v. The State,* 89 Ala. 122.

PELHAM, J.—The portions of the court's oral charge to which exceptions were reserved correctly state the law as applicable to the evidence in the case.   It was shown by the evidence for the state and by the testi-

mony of the defendants themselves that there was very bad feeling existing "on both sides" as between the defendants and the deceased for some time prior to and at the time of the difficulty. For the defendant to get out of the buggy in which he was driving to go towards the deceased, who was standing on the ground, for the purpose of resenting opprobrious epithets, knowing of the bad feeling and enmity mutually existing, was such an act as was calculated to bring on a difficulty likely to result in serious consequences, and, under these circumstances, the defendant could not invoke the doctrine of self-defense.—*Skipper v. State*, 144 Ala. 100, 42 South. 43. "He who kills a human being, to be justifiable, must be mindful of his words and acts on the occasion which are likely to produce a deadly combat, and if by his words, acts, or deeds he shows a willingness to enter the conflict, or invites it, he will be held to have produced the necessity of slaying his adversary, and cannot invoke self-defense.—*Stallworth v. State*, 146 Ala. 8 [41 South. 184]; 5 Mayfield's, p. 863." 6 Mayfield's Dig. p. 654, § 142. The doctrine of self-defense cannot be invoked to justify a killing unless the defendant is entirely free from fault in provoking or bringing on the difficulty.—*Robinson v. State*, 155 Ala. 67, 45 South. 916. And the necessity to kill, when created by the slayer, will not justify the taking of human life.—*Montgomery v. State*, 160 Ala. 7, 49 South. 902. The statute making abusive language used by the person assaulted or beaten, at or near the time of the difficulty, a matter to be considered by the jury in extenuation or justification of the defendant in committing the assault applies only to prosecutions for assault, assault and battery, and affray, and not to homicides.—*Prior v. State*, 77 Ala. 56. No words of reproach or insult, however grievous

or insulting, unaccompanied by an assault on the person, will justify an assault made under such circumstances that it is likely to result fatally, and does in fact result in taking the life of the person assaulted (*Morris v. State*, 25 Ala. 57) ; and if to avenge a verbal insult a blow is given with an instrument calculated to produce death, and from it death ensues the offense is murder.—*Grant v. State*, 62 Ala. 233 ; *Judge v. State*, 58 Ala. 406, 29 Am. Rep. 757 ; *Nutt v. State*, 63 Ala. 180. For the reasons above given, it will be seen that, as referred to the evidence in this case, the court was not in error in that part of the oral charge excepted to or in refusing written charges Nos. 1, 5, 7, 9, 11, and 14.

Charge 4 is not a clear statement of any proposition of law. It is calculated to confuse and mislead the jury in that it might be taken by the jury to mean that uncommunicated threats are to be given the same weight and are to be considered by them as material evidence for the same purposes in justifying the actions of the defendant, Holland Spivey, as communicated threats. The charge as written might be considered by the jury to mean, in effect, that uncommunicated and communicated threats, without distinction, are material evidence for the same purposes and should be given the same weight on the same footing, and, in addition, also should be considered to show the quo animo of the demonstration or character of the assault made by Stevens on Holland Spivey. The purposes for which uncommunicated threats are admissible and should be considered are not clearly stated, and, by coupling in the language used in the charge communicated and uncommunicated threats in this way, the jury might have been misled as to the purposes for which such testimony is admissible and as to how it should be regarded and considered by them.

The charge also invades the province of the jury in that it instructs the jury positively that they should consider a certain portion of the evidence as material.

Charge No. 12 is an incorrect statement of the law and an invasion of the province of the jury. It cannot be said that carrying a pistol under the circumstances predicated is not, as a matter of law, an unlawful act, but the jury might take such circumstances into consideration in weighing the evidence either in mitigation or justification.

There was no abuse of the discretion of the court in permitting the defendant Holland Spivey, when testifying as a witness in his own behalf, to be interrogated on cross-examination about not having introduced the clothing worn by him on the occasion of the fatal difficulty at the preliminary trial, as the clothing had been introduced by the defendant on the trial, and the evidence was in conflict as to whether it was in the same condition as to the cuts, etc., on it as it was shortly after the fatal rencounter.

We have discussed all the matters argued by counsel in brief, and an examination of the other matters presented by the record does not reveal any error authorizing a reversal of the case, and an affirmance is therefore ordered.

Affirmed.